GEORGE W. STAPLE *v.* VICKSBURG WATERWORKS COMPANY.

[44 South., 766.]

CONTRACT. *Guaranty. Past Debt. Construction.*

A tentative and provisional arrangement made between a third party and a water company, evidenced by writing, by which the company was induced to supply water to the owner of a laundry, does not bind the third party to pay a debt due at the time the arrangement was perfected from the owner of laundry to the water company.

FROM the circuit court of Warren county.

HON. JOHN N. BUSH, Judge.

The Waterworks Company, appellee, was plaintiff in the court below; Staple, the appellant and others, were defendants there.

FROM a judgment in plaintiff's favor, defendant, George W. Staple, appealed to the supreme court.

The declaration contained two counts. In the first count appellant Staple, his brother, W. H. Staple, and one Geisler, were sued as partners, and in the second count appellant was sued as a guarantor. W. H. Staple and Geisler pleaded the general issue, and appellant pleaded to the first count of the declaration that he was not a partner of or with his codefendants, who did business under the name Troy Laundry, and that he had no interest whatever in the laundry, except that he had loaned money to W. H. Staple to assist him in establishing the business and to the second count he pleaded the general issue. At the con-

clusion of the evidence the trial court gave a peremptory instruction for plaintiff.

*McCabe & McCabe,* for appellant.

The appellee failed to prove liability on the part of appellant upon either of the counts of the declaration.

The only facts offered to show that appellant was a partner were substantially the following: A short while before the failure of the Troy Laundry, G. W. Staple's name appeared upon the window of the place where the business was being conducted, but there was no proof that it was put there by him, or by his authority; and it was put there long after the debt in this case contracted. The plaintiff also proved that appellant was attached in the justice court of Warren county, as a partner in the Troy Laundry. This was the rankest heresay, and was not admissible and was duly objected to by appellant, and is assigned for error here. The plaintiff also proved that when the laundry failed, the machinery was shipped to appellant at Meridian, and this was all the evidence offered to prove that appellant was a partner.

If any of the foregoing evidence was admissible, which we dispute, it did not show that appellant was a partner in the Troy Laundry, but it was all explained by the testimony of the defendant that he was never a partner in that business. It was shown that he had nothing to do with the placing of his name on the window and that he did not know of it until afterwards. His brother, W. H. Staple, was largely indebted to him, and when he found that he was about to fail in business, he undertook, of his own motion, to protect appellant by making a bill of sale to him of the plant. In regard to the attachment in the justice court, it was shown that the attachment was sued out from information obtained by the witness, who did not remember whence he obtained it. It was also shown that the amount involved in the attachment suit was after the suit guaranteed by appellant and paid by him.

The laundry plant was shipped to Meridian to appellant because he had a claim on the same, growing out of the fact that he had lent money to W. H. Staple, his brother, to conduct and carry on the business.

It is contended that the letter of December 7, 1904, contained a promise on the part of appellant to pay the amount sued for in the declaration, $324.66. This contention, we deny. It is true, no doubt, that the purpose of Crumpler, in writing to G. W. Staple, was to get from him a written promise to pay this bill.

If appellant is bound for the payment of this debt by this correspondence, he is not bound by what Crumpler wrote, or by what Crumpler wanted him to write. But he is bound by what he wrote himself, in other words, he is bound, if bound at all, by his own letter, by his own language, by his own words and not by the language, letters or words of Crumpler. Looking to appellant's letter we find that he purposely avoided promising to pay the indebtedness. He started out by saying that he would come over to Vicksburg in a few days and talk over the matter with Crumpler. If he had intended to pay the whole debt he would have said so at once instead of promising to come over and see about it. It was also manifest that he was not satisfied with the rates that Crumpler was charging his brother, and he wanted to see if he could not get the rate reduced; but as Crumpler had written him that unless something was done "he would have to shut off the water and bring suit at once," appellant offered a substitute for Crumpler's proposition.

The true construction of appellant's letter is this: That he would make payments each week as long as he felt or thought it was advisable for him to do so, and that whenever he got ready to quit making these payments he would do so. In his testimony he says that he was anxious for the laundry to keep going, with the hope that his brother might, while it was going, make an advantageous sale. Of course as soon as it was shut

down, it would not sell for half price. We feel quite sure that the learned judge below erred in construing this letter as an absolute and unqualified promise to pay the debt sued for, and in giving a peremptory instruction to the jury to find for the appellee.

*McLaurin, Armistead & Brien,* for appellee.

This case can be determined by the construction of the three letters found in the record. In the letter of the Vicksburg Waterworks Company, December 5, 1904, appellant is advised why the water company called on him for the payment of its past due water bills and for those to accrue during the operation of the Troy Laundry. In that letter appellant is advised that his brother W. H. Staple had informed appellee that appellant was the proprietor and had agreed to pay all past and future water bills, and therefore the appellee called on appellant for the payment of these bills, suggesting that he would let them be paid in $20 installments weekly.

Reading the letter of December 7, 1904, written by appellant to appellee in the light of the letter of the appellee dated December 25, 1904, and as an answer to appellee's letter of December 5, 1904, is the only way by which the court can get at the intention of the parties. It seems incredible to say that appellant did not admit all that appellee claimed in its letter of December 5, 1904, because, without denying any of the statements of appellee's letter, appellant, in his letter replying to same, of December 7, 1904, makes arrangements for the payment of the debt. And in the concluding part of appellant's letter he says:

"When I do not pay the drafts so made out or arrange otherwise to protect you, then turn off the water or whatever is proper in the case, and you can commence this arrangement on next Monday."

This is another recognition that he was the proprietor of the establishment and was promising in this letter to arrange so

as to protect appellee's debt.  So the court will see from the
appellee's letter to appellant, and appellant's answer thereto,
that there is no denial in appellant's answer to any of the in-
formation gotten from appellant's brother written to appellant
by the appellee; on the contrary, appellant acquiesces in all the
information contained in appellee's letter of December 5, and
promises to "arrange to protect."

Counsel for appellant, in their brief, insist that the appel-
lant's liability must be determined solely and exclusively by
the technical language of appellant's letter to appellee of De-
cember 7, 1904, without reference to anything else; that it
must be construed in the light of an answer to appellee's letter
of December 5, 1904, and must not be considered in reference
to any of the matters stated in appellee's letter of December
5, 1904.  This is entirely too narrow a view to take of this
transaction; to get at the intent of the parties it is proper for
the court to consider all the letters together about the same
subject matter.  Going through the record the court will find
that the Troy Laundry was not a successful undertaking and
that appellant undertook to become the owner of all the ma-
chinery in the store and had loaded it on the cars to be shipped
to himself at Meridian, and after he thought he was safe from
the reach of the law, he then, for the first time, repudiates the
water bill which he had promised to "arrange to protect" as
stated in his letter of December 7, 1904.  Showing that this
was the understanding of appellant, he went ahead and paid two
checks for $20 each, drawn against him in paying the weekly
installments mentioned in appellee's letter of December 5, 1904,
as a means of liquidating the indebtedness.  And when the third
instalment fell due, he declined it because he had undertaken to
get the property away from Vicksburg and in his possession in
Meridian.  The purpose of all this is manifest from the record
as appellant states in his own testimony that he paid these
checks for the purpose of not having the water shut off from
the Troy Laundry while he was operating it in Vicksburg, be-

cause he was advised in appellee's letter of December 5, 1904, that unless the $20 was paid each week, he would have to shut off the water and bring suit. Appellant was fully advised of all these facts when he wrote his letter in reply and proceeded to pay $20 mentioned in 'appellee's letter and to use the water until such time as he thought he could escape further payments and he seeks now to appropriate the property and let the water company lose its debt, because the record shows that the other members of the partnership are insolvent. To sustain the contention of appellant would be to crown a trick with success.

WHITFIELD, C. J., delivered the opinion of the court.

There is no evidence whatever of any partnership between G. W. Staple and the other two persons, W. H. Staple and Geisler. Learned counsel for appellant state that the peremptory instruction was given by the learned circuit judge not on the ground that there was a partnership, but on the other count in the declaration—that G. W. Staple had become a guarantor of the past indebtedness of the Troy Laundry, amounting to some $262.02. This contention turns exclusively upon the construction placed upon the following letter and reply, before setting out which it will be necessary merely to say that the Troy Laundry, a partnership consisting of W. H. Staple and Geisler, got into failing circumstances and was due the appellee company $262.02 for arrearages of water charges. The manager of the appellee company, ascertaining the situation, wrote the letter and received the answer set out below. The only connection shown by the evidence between G. W. Staple, and his brother, W. H. Staple, is that W. H. Staple was the younger and only brother of G. W. Staple, that G. W. Staple had furnished the money necessary to enable W. H. Staple and Geisler to buy the plant originally, and had subsequently loaned him other sums of money, and that, when the crash came, W. H. Staple and Geisler executed a deed of trust to G. W. Staple to

secure him in payment of the sums of money advanced by him to his brother, W. H. Staple. The correspondence referred to is as follows:

*Waterworks to Staple.*

"VICKSBURG, MISS., December 5, 1904.

"G. W. Staple, Meridian, Miss.—Dear Sir: We have just been down to the Troy Laundry to see about the account the laundry owes us, and your brother tells us you are now the proprietor, and that it was understood you were to pay the water company's bills for the past and future as long as you run the plant. The amount that is due up to December 1, 1904, is $262.02. Part of this has been used since you have been the proprietor. We told your brother this morning that if you would give us your guaranty in writing or in notes payable along to suit you, provided it was not less than $20 a week, we were willing to wait and let it be paid in that way; otherwise, we would have to shut off the water and bring suit at once. But, before taking action, we will wait a few days on you. Kindly let us hear from you by return mail.

"Yours truly,
"VICKSBURG WATERWORKS CO.,
"M. O. Crumpler, Mgr."

*Staple to Waterworks.*

"MERIDIAN, MISS., December 7, 1904.

"The Vicksburg Waterworks, Vicksburg, Mississippi— Dear Sir: I have your letter and hasten to answer the same. I expect to come over there in a few days, and am now arranging my affairs so I can come. I would like to talk over this matter with you personally. I pay fifteen cents a thousand gallons, and that has always been considered ample by the water company here. I understand that your price is something over twice this. Don't you think you can make me a reduction? However, I will call on you as soon as I get there and see

about the matter.   As to present I would like for you to do this: You call on my brother each Monday morning, and ask him for the amount right there.   I would like you to be a little easy on him by making it $15.   If he pays a part, draw on me on that day for the balance due for the preceding week; and if he pays all, let it go at that.   When I do not pay the drafts so made out, or arrange otherwise to protect you, then turn off the water, or whatever is proper in the case, and you can commence this arrangement on next Monday.   Trusting this will be satisfactory to you, I am,

"Yours truly,

"GEO. W. STAPLE."

What occurred after this correspondence was the failure of W. H. Staple to pay the $20 on two occasions, and the payment of the same upon draft being made upon him by Geo. W. Staple to appellee.   The appellant says that he expected to go over to Vicksburg in a few days, that he would like, when he got there, to talk this matter over personally with Mr. Crumpler, and that he thought the appellee was charging too much for its water, and then concludes by directing him, for the present, to call on his brother every Monday morning, and ask him (the brother), as the debtor, for the amount, and then adds that, if his brother did not pay, Crumpler might draw on him for the balance due—not for arrearages, but for the balance due for the preceding week—and then finally says that, if he did not pay the drafts so made, Crumpler could proceed as he chose. All this was a mere tentative and provisional arrangement, from which we do not think there can be deduced any undertaking on the part of G. W. Staple definitely and certainly to become a guarantor for the indebtedness of the Troy Laundry. On the whole case there should have been a peremptory instruction to find for the defendant.

*Reversed and remanded.*